THOMAS DUNHAM and FREDERICK DIMON *v.* DANIEL L. PET-
TEE and MOSES MANN.

An action cannot be maintained by the vendor against the purchaser, upon an executory contract for the sale of goods, without showing an offer of performance on the part of the plaintiff, as well as a failure to perform on the part of the defendant.

Where there exists a valid lien for storage, payable by the vendor, a tender of delivery is not sufficient, unless accompanied by a provision whereby the purchaser will be enabled to receive the goods unincumbered of the lien.

It will not aid the plaintiff, in such case, to produce the testimony of the storekeeper, to the effect that he would have waived his lien and surrendered the goods.

It must appear, that the storekeeper had no lien which he could have insisted upon had he chosen so to do.

The tender being made to a clerk of the purchaser, the omission of such clerk to specify the lien for storage as a reason for refusing to accept the goods, is not a waiver of the objection.

In order to charge the purchaser, in any event, with a waiver of objection to the sufficiency of the tender, he must be shown to have had knowledge of the lien.

The goods mentioned in the contract of sale, being a quantity of iron in a bonded warehouse, the offer of a permit wherewith the purchaser would acquire the legal, unconditional control of the property, would be a sufficient tender.

THIS was a controversy between the parties to the following contract:

"Sold to Messrs. Pettee & Mann, for account of Messrs. Dunham & Dimon, 155 tons (or thereabout) of English bar iron, as per specification of the same, now in public store in this city, at fifty dollars per ton, as per custom house weigher's return, equal to six months' credit; but payment for said iron is to be made as follows, to wit: 750 dollars to be paid now, and the balance is to be paid within sixty days from this date, and discount is to be made on the bill at the rate of seven per cent. per annum, reckoning the time from the date

of the average payment of the bill until the end of the six months above named. The sellers are to hold a policy of insurance on the iron until the whole amount is paid; and the buyers are to pay the insurance and all storage expenses from and after this date. It is understood that the iron is to be paid for on delivery, (within the 60 days aforesaid,) and should the full amount not be paid within the 60 days aforesaid, Messrs. Dunham & Dimon will be at liberty to sell the iron to other parties, for account of Messrs. Pettee & Mann.

"New York, 12th March, 1849.

"NATHAN CASWELL, *Broker.*"

The complaint which was filed by Dunham and Dimon set out the contract, and alleged, that in part performance thereof, the defendants paid $750; that the plaintiffs were ready and willing to deliver, and did offer the iron within the sixty days; that the defendants refused to receive the same and to pay the balance of the purchase money, to the plaintiffs' damage in the sum of $1,189 80, and interest.

The answer admitted the execution of the contract and the payment of $750 on account thereof; but denied that the plaintiffs were either ready or willing to deliver the goods pursuant to the contract, or tendered the same, and denied that the defendants refused to perform their part of the contract. A demand from the plaintiffs, and a refusal by them to deliver, were also averred.

The cause was tried twice. Upon the first trial the jury were charged, that if the purchasers, during the time fixed in the contract, did not demand the delivery of the iron and offer to pay therefor, the plaintiff might recover. The case being taken to the Court of Appeals, this instruction was there held erroneous, and it was determined, by that tribunal, that the plaintiff, as a condition of recovery, must show a tender on his part. (See 4 Selden's Reports, 508.)

A second trial having taken place in accordance with the order of the court of last resort, the plaintiffs again obtained

a verdict and judgment, which now came up for review before the general term.

It appeared in evidence that the iron, consisting of about one hundred and fifty tons, was in the United States bonded warehouse, number eighty-eight Washington street, New York; that the storehouse keeper, in order to deliver the iron, would legally require a permit from the custom house authorities, and that a valid lien existed thereon for storage accrued prior to the date of the contract.

The storehouse keeper, however, testified, that he should have delivered the iron, upon receiving a permit and an order from the plaintiffs, without payment of storage.

The plaintiffs, through a clerk, made to one of the defendants personally a formal tender of delivery, but withdrew it upon the statement of an objection that a permit from the custom house was not offered. A second tender of delivery was made, but, on this occasion, to a clerk of the defendants, the latter being temporarily absent from their store. The plaintiffs offered a permit, and rendered a bill for the iron, wherein charges for storage since the date of the contract were included. The clerk refused to accept the tender of the permit, but no objection was raised on the ground of the existence of any lien for previous storage. It was not shown that either the defendants or their clerk had knowledge of such lien.

A motion for a nonsuit was made upon the following grounds:

1. That there must be an actual delivery or tender of the iron before the plaintiffs can recover;

2. That a symbolical delivery is only good where the vendee accepts;

3. That if a symbolical delivery is good, then the plaintiffs have not made such a delivery or offer to deliver; and also on the ground,

4. That the plaintiffs, at the time they demanded the money for the iron, had not delivered it, and were not ready or in a condition to deliver it, or to give the defendants a free and clear title to it; inasmuch as at the time they first demanded

Dunham *v.* Pettee.

it, it had not passed the custom house, nor had the duties been paid, and it was also subject to a lien for storage; and at the time of the alleged second demand, it was still subject to such storage lien; even if the duties had been paid; and that such latter demand was insufficient in form, and was not made at a proper time or occasion;

5. And also that the items contained in the account rendered for storage, insurance, &c., were improper, and too much money was claimed;

6. That the permit was not endorsed.

The motion for a nonsuit was denied.

The following is the substance of the charge to the jury:

"The action is brought to recover the difference between the price agreed to be paid by the defendants and the value of the iron on the day they were bound to complete. By the terms of the agreement the defendants had sixty days to complete, and the plaintiffs were under obligations to deliver within that time. Mutual acts were necessary. The plaintiffs were not bound to deliver without receiving the price, and the defendants were not bound to pay without receiving the iron.

"The real question in this case is, were the plaintiffs ready and willing, within the sixty days, to deliver, and did they offer to do so? They bring their action upon the ground that they were ready, and offered to deliver. The permit delivered to the defendants, together with the contract of purchase and payment of the bill, and the clerk's receipt thereon therefor, would invest them with the title of the iron, and would have been sufficient. To this the defendants' counsel excepted.

"It is objected that the plaintiffs were not in a condition to deliver; that the iron was subject to liens, and until it was discharged they had not the possession for the purpose of delivery.

"The witness says, if an order had come within sixty days he would have delivered without payment of the storage; when parties are good he would deliver; and he says instances

HARVARD LAW SCHOOL LIBRARY.

are rare—I think he said one in fifty—where he refuses. Therefore it would seem that at any time it could have been delivered upon the written order of Dunham & Dimon and the permit.

"It appears that on 8th May, the defendants signified to a broker their willingness to receive the iron, and notified them that they had sold it to Wilson & Co., at a reduced price; that on the 11th May, the plaintiffs sent their clerk with a bill; and, according to his testimony, he saw one of the defendants, who said it would be necessary to obtain the permit, that he wished to get the notes of Wilson & Co. to have them discounted to raise funds to pay for the iron. They sent the permit back not endorsed by them. The clerk informed him Pettee had gone out—that it was only a matter of form—and would not be back till six o'clock.

"This is the only point of conflict in the testimony. He does not recollect as to any conversation about notes of Wilson & Co., and he has no recollection except that the clerk called. He states further that Pettee was not in. It is for you to determine between these two witnesses.

"Where one witness recollects and another does not, usually the one who does is more reliable than the one who does not. The witness, Dimon, made a memorandum of what took place when he came back with the permit; that circumstance ought to weigh in your minds in determining credibility. If the plaintiffs' clerk has given the true version, it is for you to say whether they were ready to deliver—whether they made their offer; if they did, then they can recover the difference.

"The iron appears to have fallen in the market, and the price was agreed upon by the defendants; this circumstance is not to be overlooked. According to the testimony of the plaintiffs' clerk, the plaintiffs did about all that could be done to carry out this contract on their part, when he transferred the order or permit by means of which the goods are transferred, that is, when he sent the permit and offered to deliver it.

"It is objected that this does not transfer, and it is insisted that the charges on the bill are not chargeable to the defendants. There is a charge for storage on the bill. In regard to both of these objections, if no objections on these accounts were made at the time, it is now too late to interpose them. To this part of the charge the defendants' counsel excepted. The defendants were not in a condition to receive the permit; no check was there, and no subsequent demand was made afterwards, or any other action taken in the premises except their naked declaration that they wanted the permit so that they could get the notes of Wilson & Co. discounted to pay for the iron, nor did they object that the permit was bad in form, or that there were overcharges in the bill.

"Pettee's clerk said they wanted the permit, saying nothing about paying for the iron when he got it.

"The Court of Appeals, in their opinion in this case on granting a new trial, say it is a matter of no consequence whether the permit was endorsed or not; payment and the receipt on the bill, together with the contract of sale, would transfer the title. In that respect Judge Ruggles' opinion is applicable. 'I have no hesitation in saying, on such papers being presented to the storekeeper, and he refusing to deliver, he would be liable to pay any damage the owner would sustain.'

"The rule of law is, if neither party takes any steps to put the other in default, the contract falls."

The jury returned a verdict for the plaintiffs for $941 05.

The defendants, in the first instance, moved for a new trial at a special term, which was denied, and they appealed to the general term.

*Joseph T. Mills* and *William Curtis Noyes*, for the defendants.

*Charles H. Hunt*, for the plaintiffs.

INGRAHAM, FIRST J.—When the tender was first made to

Pettee, with a bill for the iron, the objection to it, made by the defendants, was that they wanted the permit. This objection was a good one; without it, no delivery of the iron could be made. When the clerk of the plaintiffs returned with the permit, neither of the defendants was at the store.

Without expressing any doubt as to the sufficiency of a tender to a clerk, I think there can be no doubt that he had no authority to waive any thing that the defendants had a right to insist upon to make such delivery to them perfect; and if at that time there was a valid lien upon the iron for storage, for which the storekeeper could detain the iron, there was no sufficient tender made to the clerk. He had no right to dispense with the payment of such lien, and the existence of it upon the property, at the time it was offered to the clerk, made the tender ineffectual. If the tender had been made to one of the defendants, and he had not made the objection, it might be a question whether he had not waived it; but even in such case it would be doubtful, unless it appeared that he had knowledge that such storage was at the time unpaid. In such a state of things it was important to show whether there was any such lien by which the property could have been detained; but it by no means follows that the opinion of the storekeeper, as to what he would have done in delivering the iron, founded on his knowledge of the responsibility of the plaintiffs, was admissible. On the former trial this evidence was admitted without objection, and the chief justice in the Court of Appeals, in delivering the opinion of the court, refers to that evidence as showing that such delivery would have been made. As no objection had been taken to such testimony, he was not called upon to express any opinion as to its admissibility.

We have heretofore held, that where goods were in bond, under the charge of the United States officers, the purchaser was not bound to receive them until they had been properly entered at the custom house, and that a permit from a custom house clerk to deliver them before such entry was made, was not sufficient. (*Gillespie* v. *Durand,* 3 E. D. Smith, 531.)

This rule appears to be as properly applicable where there is a lien for storage, as to a lien for duties, or where a bond is required for exportation.

It appears to me, also, that the judge erred in his charge to the jury, when he told them that as no objections were made at the time to the charge for storage, it was too late to interpose them on the trial. For the reasons before stated, viz., that it does not appear the defendants knew of any such lien, and because the clerk had no authority to waive any of the defendants' rights, they still were at liberty, upon the trial, to show that no valid tender was made.

The judgment should be reversed, and a new trial ordered.

WOODRUFF, J.—When this case was first before the court, I was of opinion that, according to the true construction of the contract between these parties, it was not the duty of the plaintiffs to seek the defendants, and tender or offer to deliver the iron, but that if the defendants did not pay, or offer to pay, for the iron within sixty days, the plaintiffs were at liberty to treat the contract as broken, sell the iron, and claim from the defendants the difference between the proceeds and the sum which the defendants were bound to pay.

But I was then of opinion, and am still, that if the true construction of the agreement be not as above stated, and the plaintiffs were bound to prove a tender of performance on their part, within the sixty days, the proof given by the plaintiffs did not establish such a tender. To be sufficient, I think the tender relied upon must (as stated in the charge on the first trial) be such as, if accepted, would, in effect, give the purchaser the legal possession and control of the goods. And that control must not be subject to the will of a third person, who might, if he chose, rightfully detain the goods.

Here there was an actual lien upon the iron for storage, which the purchaser was not bound to pay. Although the storekeeper testifies that he would have waived that lien and delivered the goods, still he was not bound to do so ; and it

was not on the day of the alleged tender known, and without a binding arrangement to that effect it could not be known that he would do so. He had a valid subsisting lien, and had the defendants accepted the tender and paid the amount demanded by the plaintiffs, the possession and control thereby acquired would have been, in fact, subject to the will, and it may be the caprice of the storekeeper. And although his evidence warrants the belief that he would have waived his lien and delivered the iron to the defendants, they were, I think, entitled to such a tender as would not have kept them subject to any hazard or risk on that point.

In other words, the offer to deliver should have been an offer to deliver, disencumbered of any lien.

I have, however, no doubt of the power of the storekeeper to waive the lien, and do not perceive the force of the analogy suggested between the present case and an attempted permit by a clerk of the custom house to deliver without proper entries at the custom house, and payment of duties, where duties are payable. Here the United States had no interest in the storage. The witness (the storekeeper) was "sole proprietor of the storehouse." The price of the storage was agreed upon between him and the plaintiffs. He was to receive the storage, and it was not to be paid to the "government." All that was necessary to warrant him in making delivery was the permit from the custom house. He, therefore, might require payment of storage before delivery, or he might waive his lien, and deliver without payment, upon the credit of the parties from whom he received the goods. Any arrangement between him and the plaintiffs, amounting to an actual giving of credit to them personally, excluding him from a lien on the iron, and possibly a previous course of dealing upon personal credit, coupled with the actual agreement made in this instance respecting the price, (to which he testified,) might have warranted the jury in finding that the defendants would, by accepting the plaintiffs' tender, have acquired the actual and legal control of the iron. But I think the charge went too far. In substance, the ques-

Dunham *v.* Pettee.

tion, whether there was or was not a subsisting lien on the goods at the time, was withdrawn from their consideration. They were told, in reference to the defendants' objection, made on the trial, (that the goods were subject to a lien for storage,) that " it would seem that at any time it could have been delivered upon the written order of Dunham & Dimon and the permit;" and the tenor of the subsequent part of the charge clearly gave the jury to understand that this objection was sufficiently disposed of.

I do not, however, understand the charge to purport, (as suggested in the opinion of the first judge,) that the objection that the goods were subject to storage not being made at the time of the tender was waived. That remark in the charge was applied solely to the absence of an endorsement on the permit, and the allegation on the trial that the bill presented for payment contained items not chargeable to the defendants.

But I think the jury should have been instructed, that if, at the time of the alleged tender, there was a valid subsisting lien upon the goods for storage, which, by the agreement between the plaintiffs and the defendants, the latter were not bound to pay, and under which the storekeeper had a legal right to detain the goods from the defendants, if he chose to do so, until they paid such storage, the tender was not sufficient, unless the defendants, with knowledge of the condition of the iron in that respect, waived any objection upon that ground.

And in respect to such waiver, I think that if the facts were known to the defendants at the time, they being also aware that the storekeeper was in a course of dealing with these plaintiffs, looking to their personal credit and not claiming any lien, or even that that was the customary usage, the omission of the defendants to make the objection might amount to an acquiescence in the tender in this respect, without requiring the plaintiffs to go to the storekeeper at once, and make the payment of storage. Indeed, in such case, it appears to me that good faith required that they should apprise the plaintiffs of their unwillingness to receive

and pay on that ground, for then the defendants had it in their power to remove the objection, if it existed.

But as the case stood on the trial, the plaintiffs, so far from apprising the defendants that the storage had not been paid, actually inserted in their bill of charges the storage for two months, which the defendants had agreed to pay, thereby intimating, at least, that they, the plaintiffs, had paid that storage, and required reimbursement.

My views of the true construction of the agreement not being sustained by the court of last resort, I am constrained to say, that although the position taken by the defendants in this litigation seems to me unreasonable, not to say unjust, a new trial ought to be granted, that the effect of the alleged lien for storage, if it be found to exist, may be presented to the jury, in conformity with the views above expressed. In other respects, I do not think there was any error in the charge.

Judgment reversed, and new trial ordered, costs to abide the event.